UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SEGENVO, LLC, and OAKRIDGE IMAGING, LLC, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-1300 |
| | § | |
| PROVIDIAN MEDICAL EQUIPMENT, LLC, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss or, in the alternative, transfer venue, filed by defendant Providian Medical Equipment, LLC ("Providian"). After reviewing the motion, response, reply, and applicable law, the court is of the opinion that the motion to dismiss should be GRANTED.

### I. BACKGROUND

This case involves a dispute over the purchase of medical equipment. Dkts. 1, 7. On November 26, 2018, Providian, an Ohio company, filed a claim in Ohio state court against plaintiffs Segenvo, LLC, and Oakridge Imaging, LLC, which are Texas companies that both do business as "Go Imaging" (collectively, "Go Imaging"). Dkt. 7. The Ohio complaint contains allegations that Go Imaging owed Providian money for an MRI machine.[1] Dkt. 7.

Go Imaging filed its claim against Providian in this court on April 10, 2019. Dkt. 1. Go Imaging asserts claims of fraudulent inducement, concealment, breach of contract, and rescission.

---

[1] The Ohio lawsuit includes some additional parties, which the court will discuss during its analysis of the motion to dismiss.

*Id.* Go Imaging contends that Providian did not provide the type of MRI machine that was promised and that the machine Providian did provide—later than promised—did not work. *Id.*

According to the complaint filed in this court, Providian originally sent Go Imaging a Sales Agreement on October 11, 2017, but it was for a Symphony MRI machine, which was not the type of machine that Go Imaging wanted. *Id.* The parties thereafter negotiated because Go Imaging wanted an Avanto machine, and Go Imaging signed a Sales Agreement for the Avanto machine on November 10, 2017. *Id.* & Ex. 2. Go Imaging asserts that Providian did not deliver as promised on that contract and instead again offered to sell Go Imaging a Symphony machine. *Id.* On March 15, 2018, Providian sent Go Imaging a Sales Agreement for the Symphony machine (the "Sales Agreement") and a Repurchase Agreement in which Providian promised to repurchase the Symphony machine once an Avanto machine became available. *Id.* & Ex. 4. The repurchase was for the price at which the Symphony machine was sold minus $8,500 per month (essentially rent) that Go Imaging used it. *Id.* & Exs. 3, 4. Go Imaging contends that, despite Providian's representation that it was going to eventually provide an Avanto machine, Providian never intended to do so. Dkt. 1. Go Imaging, however, endorsed the Sales Agreement and the Repurchase Agreement, expecting to eventually receive an Avanto. *Id.* The Sales Agreement contained a provision that indicated the attached "Terms of Sale" were incorporated into the document. Dkt. 1, Ex. 3. Providian's "Standard Terms and Conditions of Sale," which is the formal name of the attached document, has a forum selection clause that requires disputes between the parties be brought in Ohio. Dkt. 7, Ex. A.

Providian moves for dismissal or transfer under the *Colorado River* doctrine, arguing that the court should abstain from hearing this case because of the first-filed parallel claim in Ohio. Dkt. 7. It also argues that the case should be dismissed under the doctrine of *forum non conveniens*

because there is a valid, enforceable and mandatory forum selection clause in the parties' contract requiring that all disputes between the parties be brought exclusively in the state or federal courts of Lake County, Ohio. *Id.* Providian additionally contends that Go Imaging fails to state a claim for which relief can be granted because (1) its claim was filed in this court more than one year after the equipment purchase, and the parties agreed to a one-year statute of limitations; and (2) the fraudulent inducement claim is not pled with particularlity. *Id.* Providian requests, as an alternative to dismissal pursuant to *Colorado River* or *forum non conveniens*, that any claims that survive the motion to dismiss for failure to state a claim be transferred to the Northern District of Ohio, Eastern Division, in accordance with the forum selection clause. *Id.*

Go Imaging argues that the relevant conduct occurred in Texas and the court should not reward Providian for winning the race to the courthouse. Dkt. 9. It asserts that the court also should not rely on the venue provision in Providian's Standard Terms and Conditions of Sale because it is contained in a document that is separate from the Sales Agreement, and Go Imaging's representative did not sign the separate document. *Id.* It also argues that even if the court finds that the unsigned Terms and Conditions of Sale was incorporated into the Sales Agreement by reference, the court should not enforce the venue provision because doing so would be unreasonable. *Id.* Go Imaging contends that all of its claims are adequately pled and that they are not time barred because the one-year statute of limitations is contained in the unenforceable Terms and Conditions of Sale. *Id.* Go Imaging also argues that the Sales Agreement was procured by fraud and should not be enforced. *Id.* Additionally, it argues that its complaint was filed within one year of accrual of the causes of action. *Id.* Finally, with regard to the alternative motion to transfer, Go Imaging contends that there is not good cause to transfer this case to Ohio. *Id.*

In reply, Providian points out that Go Imaging's representative signed the Sales Agreement, and directly above his signature is a provision that incorporates the Standard Terms and Conditions of Sale. Dkt. 10. Additionally, it argues that there was no "race to the courthouse," as Go Imaging did not even file its claim until five months after Providian filed its Ohio lawsuit. *Id.* Providian contends that this case has materially the same parties as the Ohio case and resolution of the claims in Ohio will dispose of the claims here. *Id.* Thus, it urges the court to abstain or transfer. *Id.*

## II. *COLORADO RIVER* ABSTENTION

The court will first consider Providian's argument that the court should abstain from hearing Go Imaging's claims and leave the matter to the Ohio state court in which Providian filed its lawsuit against Go Imaging.

### A. Legal Standard

"*Colorado River* abstention is a narrow exception to a federal court's virtually unflagging duty to adjudicate a controversy that is properly before it." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014) (discussing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236 (1976)). Under *Colorado River*, "a federal court may abstain only under exceptional circumstances." *Id.* (internal citation omitted). The Fifth Circuit instructs that a decision to abstain "must be based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.*

Before applying the *Colorado River* factors, the court must determine whether the state proceeding and the federal action are sufficiently parallel to make consideration of abstention proper. *Id.* Parallel actions are those "involving the same parties and the same issues." *Id.* The court should look to the named parties and to the substance of the claims asserted in the two proceedings. *Id.*

4

If the court determines the two proceedings are parallel, then the court must balance six factors on a case-by-case basis to determine whether exceptional circumstances warrant abstention. *Id.* at 798. Those factors are: (1) assumption by either court of jurisdiction over a *res*; (2) relative inconvenience of the forums; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Id.* Courts balance those factors carefully with "the balance heavily weighted in favor of exercise of jurisdiction." *Id.*

**B.     Are the Claims Parallel?**

Providian argues that Go Imaging "cannot hide the fact that Providian filed suit against [it] and [its] related Go Imaging entities in the Ohio Action—alleging breach of contract and unjust enrichment claims for unpaid amounts owed—related to the very same contract and medical equipment as in Plaintiffs' Complaint." Dkt. 7. Providian asserts that the Ohio lawsuit and this lawsuit involve substantially similar allegations related to the identical sales transactions and contractual agreements. *Id.*

Go Imaging points out that the parties and claims in the Ohio lawsuit are different. The Ohio lawsuit was filed by Providian *and* Providian Medical Field Services, LLC, and these entities filed suit against (1) Go Imaging, Penn Imaging of Humble, LP d/b/a/ Go Imaging; (2) JK Radiant, LP d/b/a Go Imaging; (3) Segenvo, LLC d/b/a Go Imaging; (4) John Doe Corporation d/b/a Go Imaging; and (5) John Engelhardt (d/b/a Go Imaging). Dkt. 9. This case was filed by only one of the four defendants in the Ohio state case, Segenvo, LLC, and an additional party not named in the Ohio case, Oakridge Imaging, LLC, and the only defendant is Providian, not Providian Medical Field Service,

LLC. Dkt. 1. Go Imaging also contends that Providian has not established that the two cases have the same claims. Dkt. 9.

Providian argues in reply that the two cases involve *materially* the same parties. Dkt. 10. It asserts that the only reason the parties are nominally different is because the plaintiffs in this case added Oakridge Imaging "to game federal court abstention rules." *Id.* Providian contends that the "Ohio litigation and this case involve the same effective parties, the exact same medical equipment, and the exact same contracts and agreements." *Id.* It points out that the Ohio case "will necessarily dispose of all claims asserted by all parties in this action." *Id.* (citing *African Methodist Episcopal Church*, 756 F.3d at 798).

Certainly, some of the named parties in the Ohio case are not named in this case, and Oakridge is not named in the Ohio case. However, in their complaint in this case, Go Imaging states that "Plaintiffs own and operate medical imaging centers in and around the Houston area, which imaging centers do business as Go-Imaging." Dkt. 1. The court does not find the fact that there are additional Go Imaging centers named in the Ohio case, and an additional Go Imaging entity is named as a plaintiff in this case, to be a significant enough distinction to render the two cases non-parallel. In *African Methodist Episcopal Church*, the Fifth Circuit advised that the first step, prior to applying the *Colorado River* factors, is to address whether the two lawsuits "are sufficiently parallel to make consideration of abstention proper." 756 F.3d at 797. It noted that parallel actions were "those 'involving the same parties and the same issues.'" *Id.* (quoting *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1978)). However, it also instructed that it is not always necessary to "minc[e] insistence on precise identity of parties and issues." *Id.* (citations and quotations omitted). Instead, if it furthers the purposes of "wise judicial administration, conservation of judicial resources, and comprehensive disposition of litigation," the court may "look both to the named parties and to

the substance of the claims asserted in each proceeding." *Id.* In *African Methodist Episcopal Church*, there was an additional party named in the federal lawsuit, but the Fifth Circuit found that "the record is clear that there are only two sides in this dispute: The interests of all the parties named in either action align undisputedly." *Id.* at 798. Here, similarly, the interests of the parties align.

With regard to the claims, since all of the claims in both the Ohio state case and this case involve the same contractual relationship and medical equipment, the court finds the issues are sufficiently parallel to consider abstention in furtherance of wise judicial administration, conservation of judicial resources, and comprehensive disposition of litigation. This conclusion is also supported by *African Methodist Episcopal Church*. The causes of action in *African Methodist Episcopal Church* were not exactly the same in both disputes, but the Fifth Circuit found that the disposition of the state court case would "necessarily dispose of all claims asserted . . . in the federal action," which made the Fifth Circuit "comfortable that the [state court proceeding] and the federal action [were] sufficiently parallel." *Id.* Here, the court is likewise comfortable that the federal and state cases are sufficiently parallel.

C.  **The *Colorado River* Factors**

The court now turns to the *Colorado River* factors, which the court must weigh with the balance already weighted in favor of the exercise of jurisdiction.

First, the court must determine whether either court has assumed jurisdiction of a *res*. Providian points out that there in no action *in rem* and no *res* in Texas requiring this court to exercise jurisdiction. Dkt. 7. Go Imaging contends that the absence of a *res* weighs in favor of the federal court exercising jurisdiction, citing *Stewart v. W. Heritage Insurance Co.*, 438 F.3d 488, 492 (5th Cir. 2006). Dkt. 9. Indeed, in *Stewart*, the Fifth Circuit stated that it had "rejected the contention that the absence of this factor is 'a neutral item, of no weight on the scales,'" and found that it

7

supported the exercise of jurisdiction. 438 F.3d at 492 (quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.32d 1185, 1191 (5th Cir. 1988)). Thus, this factor tips the scales further in favor of exercising jurisdiction.

Second, the court considers the relative inconvenience of the forums. Providian claims that this factor is neutral because the plaintiffs and its witnesses likely reside in Texas, but the defendant and its witnesses reside in Ohio. Dkt. 7. Go Imaging agrees that the factor is neutral, which it argues "supports the presumption against abstention." Dkt. 9. The court agrees the factor is neutral; it does not change the balance.

The third factor is avoidance of piecemeal litigation. Providian argues that this factor weighs heavily in favor of abstention because if the court were to allow this case to proceed, this court and the state court would be separately determining the same issues regarding the same contracts. Dkt. 7. Go Imaging contends that Providian's argument "misses the mark under the applicable law." Dkt. 9. Go Imaging points out that the Fifth Circuit has instructed that *duplicative* litigation, which unavoidably occurs when there are two separate and parallel judicial systems, is different than *piecemeal* litigation. *Id.* (quoting *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650–51 (5th Cir. 2000)). It additionally notes that the Fifth Circuit has determined that the third factor alone cannot compel abstention. *Id.* (citing *Stewart*, 438 F.3d at 492–93).

In *Black Sea Investment*, the Fifth Circuit noted that the district court had stayed the litigation "primarily to avoid wasteful, duplicative litigation" even though the "'prevention of duplicative litigation is not a factor to be considered in an abstention determination.'" 204 F.3d at 650. It went on to discuss how the real danger to be avoided with the third factor is "inconsistent rulings with respect to a piece of property." *Id.* at 651; *see also Evanston Ins. Co.*, 844 F.2d at 1192 (determining that the third factor did not weigh in favor of abstention because there was "no danger of inconsistent

8

rulings affecting property ownership"). Since the court is bound by the Fifth Circuit's distinction between piecemeal and duplicative, this factor does not tilt the balance towards abstention.

The fourth factor is the order in which jurisdiction was obtained. Providian argues that this factor "weighs most favorably for abstention" because not only did Providian file its claim months before Go Imaging, but the parties actually agreed to an Ohio forum when they first entered into their contractual relationship. Dkt. 7. Go Imaging asserts that Providian's argument "misses the mark, legally and factually." Dkt. 9. It contends that the progress of the litigation in both actions is more important than how long they have been pending. *Id.* It contends that no progress has been made in the Ohio case and that they have not even asserted their counterclaims in that case yet. *Id.* Instead, they have filed a motion to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. *Id.* Providian asserts that it has completed written discovery in the Ohio case, is preparing for depositions, and is drafting a dispositive motion. Dkt. 10. The court finds that the Ohio case was clearly filed well before this case, and while it is not progressing substantially faster than this case, this factor weighs in favor of abstention.

The fifth factor is the extent to which federal law provides the rules of decision on the merits. Providian points out that this case relates to a state-law issue—breach of contract—and that the contract has a choice-of-law provision selecting Ohio law. Dkt. 7. Go Imaging argues that even if this court applies Ohio law, which it should not, this factor relates to the court's expertise on federal law, not state law, and the court should find the factor is at least neutral. Dkt. 9. The court agrees that the gist of this factor is whether the court should exercise jurisdiction because of its particular expertise in federal law. The court disagrees, however, that the factor is neutral. While the court is adept at applying Ohio or Texas law, federal law does not provide the rules of decision on the merits, so this factor weighs in favor of abstention.

The final factor is the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. Providian contends that there is no indication that Go Imaging would suffer from inadequate protection of its interests in Ohio. Dkt. 7. Go Imaging contends that this factor, by its nature, can only be neutral or weigh against abstention. Dkt. 9 (citing *Evanston Ins. Co.*, 844 F.2d at 1193). Indeed, in *Evanston Insurance Co.*, the Fifth Circuit noted, with regard to the sixth factor, that "it is clear from its nature that it can only be a neutral factor or one that weighs against, not for, abstention." 844 F.2d at 1193. This factor is thus neutral.

While there are factors weighing in support of abstention, the court finds, given the balance that weighs in favor of exercising jurisdiction, that Providian has not met its heavy burden of showing the court should abstain. Providian's motion to dismiss under *Colorado River* is DENIED.

### III. *FORUM NON CONVENIENS*

The court now turns to Providian's argument that the court should dismiss this case under the doctrine of *forum non conveniens*. Providian argues that the court should dismiss this case under the doctrine of *forum non conveniens* because there is a valid and mandatory forum selection clause requiring that the case be brought in Ohio, which Providian did. Dkt. 7. Go Imaging argues that the court should not rely on the forum selection clause in the intentionally unsigned Standard Terms and Conditions of Sale. Dkt. 9. It also asserts that the Standard Terms and Conditions of Sale cannot be incorporated into the Sales Agreement by reference under either Texas or Ohio law and that even if the Standard Terms and Conditions of Sale were incorporated, the court should not enforce the forum selection clause because enforcing the clause would be unreasonable under the circumstances as Go Imaging has no connection to or business presence in Ohio and all relevant conduct occurred in Texas. *Id.*

A.     **Legal Standard**

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60, 134 S. Ct. 568 (2013). Under this doctrine, "a court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448, 114 S. Ct. 981 (1994) (citations and quotations omitted). Whether a forum selection clause is enforceable is determined according to federal law. *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008).[2] "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995); *see also Calix-Chacon v. Global Int'l Marine, Inc.*, 493 F.3d 507, 511 (5th Cir. 2007) (noting that a forum selection clause is not enforceable if it is "fundamentally unfair and therefore unreasonable"). The party opposing enforcement bears the heavy burden of making a "'strong showing' that the clause is unreasonable." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998). There are four bases for determining that a forum selection clause is unreasonable:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will

---

[2] The court will apply, specifically, Fifth Circuit law. Providian provides Sixth Circuit law, relying on the fact that the contract calls for the application of Ohio law. However, federal courts apply the procedural law of the forum in which the court sits, and *forum non conveniens* is a procedural doctrine. *See Am. Dredging Co.*, 510 U.S. at 453 (noting that the doctrine of *forum non conveniens* is procedural, not substantive). Moreover, the court ascertains no significant distinctions between the Fifth Circuit's and Sixth's Circuit's application of the doctrine.

> deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy in the forum state.

*Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522 (1991), and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13, 92 S. Ct. 1907 (1972)).

If the court determines a forum selection clause is valid and enforceable, the clause should be "given controlling weight in all but the most exceptional cases." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S. Ct. 2239 (1988). The plaintiff's choice of forum will have no weight, and the plaintiff must instead show "that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. While courts that are considering whether a transfer to another court or dismissal under the doctrine of *forum non conveniens* is warranted typically consider a variety of private and public interest factors, if there is a valid and enforceable forum selection clause, the court should not consider arguments about the parties' private interests, as parties that have agreed upon a forum selection clause have, in essence, waived "the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252 (1981) (listing the private and public interest factors). Instead, the court may consider only the public-interest factors. *Atl. Marine*, 571 U.S. at 64. The public interest factors include: (a) administrative difficulties flowing from court congestion; (b) local interest in having localized controversies decided at home; (c) interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (d) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (e) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft Co.*, 434 U.S. at 241 n.6.

**B.     Incorporation of the Standard Terms and Conditions of Sale**

The forum selection clause[3] in the Standard Terms and Conditions of Sale states:

> 14.    Governing Law; Venue.  These Terms and the parties' relationship shall be governed by Ohio law as if the relationship arose in and was to be performed entirely within Ohio.  The exclusive venue and jurisdiction for the resolution of all disputes between the parties shall be the state or federal courts for Lake County, Ohio.  Any action for breach of contract or other claim arising out of the parties' business relationship must be commenced within one year after the cause of action has accrued.

Dkt. 7, Ex. A.  The clause is contained within a document entitled "Providian Medical, LLC Standard Terms and Conditions of Sale."  *Id.*  A signed "Sales Agreement" dated March 20, 2018 is attached to the complaint. Dkt. 1, Ex. 3.  Above Go Imaging's signature, the agreement states that the "Standard terms and conditions are set forth on the attached Terms of Sale, which is hereby incorporated by reference as if fully rewritten herein."  *Id.*

Because a mandatory forum selection clause is prima facie valid, Go Imaging bears the burden of making a strong showing that enforcement would be unreasonable.  Go Imaging argues that the Sales Agreement did not sufficiently incorporate the Standard Terms and Conditions of Sale. Dkt. 9.  The Standard Terms and Conditions of Sale that was provided by Providian has a signature line that states: "Agreed to by Customer."  Dkt. 7-1.  This line is blank.  *Id.*  Go Imaging contends that its representative intentionally did not sign the Standard Terms and Conditions of Sale because he did not agree with them and that he actually communicated this to Providian.  Dkt. 9 (citing Engelhardt Dec.).  Go Imaging acknowledges that the Sales Agreement states that it incorporates the "Standard terms and conditions as set forth on the attached Terms of Sale," but argues that under Texas law, the signed Sales Agreement must "plainly refer" to the incorporated document, which

---

[3] Go Imaging does not dispute that this is a mandatory forum selection clause; rather, it contends that it was not incorporated and that it is not enforceable.

is more specific than merely mentioning the document. *Id.* Go Imaging also argues that the Standard Terms and Conditions of Sale cannot be incorporated because the Sales Agreement referred to the attached "Terms of Sale" not the "Standard Terms and Conditions of Sale." *Id.*

Go Imaging first cites Texas law to support these arguments, noting that under Texas law, the language in the signed document must show that the parties intended for the other document to become part of the agreement. *Id.* (citing *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 267 (5th Cir. 2011)). Go Imaging cites some district court cases that found that the incorporation language in the signed documents in those cases did not indicate the entire other documents would be incorporated. *Id.* (citing *Valero Mktg. & Supply Co. v. Baldwin Contracting Co.*, No. H-09-2957, 2010 WL 1068105 (S.D. Tex. Mar. 19, 2010); *LeBlanc, Inc. v. Gulf Bitulithic Co.*, 412 S.W.2d 86, 93 (Tex. App.—Tyler 1967, writ ref'd n.r.e.); and *Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II, LLC*, 884 F. Supp. 2d 535, 552 (S.D. Tex. 2012)). It argues that it must be clear that the parties knew of and assented to the incorporated terms when attempting to enforce a forum selection clause. *Id.* (citing *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189–90 (Tex. App.—Dallas 2013, no pet.); *Polyflow, LLC v. Specialty RTP, LLC*, No. 4:15-CV-02817, 2016 WL 6909383, at *7 (S.D. Tex. May 17, 2016); *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 754 n.6 (S.D. Tex. 2002); and *Trico Marine Servs., Inc. v. Stewart & Stevenson Tech. Servs., Inc.*, 73 S.W.3d 545, 549–50 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding)).

Go Imaging argues that even if the court applies Ohio law, under Ohio law, a contract can only incorporate by reference if it makes a clear reference to the document and describes it in such terms that its identity can be ascertained beyond doubt. *Id.* (citing *Volovetz v. Tremco Barrier Sols., Inc.*, 10th Dist. Franklin No. I5AP-1056, 2016-Ohio-7707, 74 N.E.3d 743, at ¶ 27). Merely referencing it is not enough; it must indicate the parties intended to incorporate all or part of the

other document. *Id.* (same).  Go Imaging thus contends that, under Ohio law, "even if the Court relies upon the fraudulently procured [Sales] Agreement (which it should not), it should not enforce the Standard Terms and Conditions." *Id.*  It argues that the alleged incorporation by reference is not specific and does not state that the parties intended to fully incorporate Providian's "Standard Terms and Conditions of Sale." *Id.*  Instead, the allegedly incorporating languages indicates that the "Standard terms and conditions" are set forth in the attached document, but then it sets forth specific terms of the Sales Agreement including refurbishment of equipment, warranty information, and freight charges. *Id.*

"When the 'interpretation' of a forum-selection clause is at issue in a diversity case, . . . [courts] apply the forum state's choice-of-law rules to determine what substantive law governs." *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016).  However, here there is no need to do a choice-of-law analysis because the result is the same whether the court looks to Texas or Ohio law to for the incorporation by reference issue.  What the signed Sales Agreement actually says after it incorporates the terms and conditions "as if fully rewritten herein" is that "[a]dditional terms and conditions, if any, are as follows . . . ." Dkt. 1, Ex. 3.  It then sets forth the *additional* terms and conditions, including information about refurbishment, warranty, and freight charges. *See id.*  This language in the Sales Agreement thus unambiguously and fully incorporates a document entitled "Terms of Sale" under either Texas or Ohio law.

The court takes note of the fact that the allegedly incorporated document, Standard Terms and Conditions of Sale, contains a signature line and that there is no signature on the document, but Go Imaging has cited no law indicating that failure to endorse a separate form that is unambiguously

15

incorporated into a contract supports a resort to extrinsic evidence to determine the parties' intent.[4]

Under Texas law, "'extrinsic evidence cannot alter the meaning of an unambiguous contract.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 109 (Tex. 2017). Similarly, under Ohio law, "extrinsic evidence cannot be considered to give effect to the contracting parties' intentions when the language of the contract is clear and unambiguous." *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, 298, at ¶ 66; *see Rulli v. Fan Co.*, 683 N.E.2d 337, 342 (Ohio 1997) ("[I]interpretation of a clear and unambiguous contract term . . . is a matter of law, and a court should not admit extrinsic evidence to establish its meaning."). The unsigned nature of the Standard Terms and Conditions of Sale simply does not create an ambiguity, and the court must interpret the contract under its plain terms.

---

[4] The cases that Go Imaging cites do not support Go Imaging's argument in light of the unambiguous language used to incorporate the entirety of the Terms of Sale into the contract. In *One Beacon Insurance Co. v. Crowley Marine Services, Inc.*, the Fifth Circuit stated that "[n]otice of incorporated terms is reasonable where, under the particular facts of the case, '[a] reasonably prudent person should have seen' them." 648 F.3d at 268 (quoting *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir. 1986)). In *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, the court clarified that if a contract is incorporating another document by reference, and particularly when it contains a forum selection clause, "the referring language in the original document must demonstrate the parties intended to incorporate all or part of the referenced document." 409 S.W.3d at 190. The *Bob Montgomery Chevrolet* contract stated that additional benefits, qualifications, and details were available on its website and linked to terms and conditions, which the court found did not sufficiently state that the internet document was incorporated into the parties' agreement and became part of it. *Id.* In *Polyflow, LLC v. Specialty RTP, LLC*, the court found that a letter agreement that stated that all terms of a previous agreement that "survive[d] the termination of that agreement shall remain in effect" did not incorporate the forum selection clause from that other agreement because it did not state what terms survived. 2016 WL 6909383, at *7. In *Psarros v. Avior Shipping, Inc.*, the incorporation language of the contract only incorporated terms relating to wages, illness, or accident and did not incorporate the forum selection clause. 192 F. Supp. 2d at 754 n.6. In *Trico Marine Services, Inc. v. Stewart & Stevenson Technical Services, Inc.*, the signed document mentioned the general terms and conditions in the table of contents and as a heading to a section, but it found that the document did not "plainly refer, as a matter of law, to any separate document." 73 S.W.3d at 549. It determined that the heading was, at best, ambiguous, and that any attempt to refer and incorporate was not plain. *Id.* at 550. Here, the contract clearly and plainly incorporates the Terms of Sale "as if fully rewritten herein." Dkt. 1, Ex. 3.

The fact that the Sales Agreement incorporated, specifically, "Standard terms and conditions . . . on the attached 'Terms of Sale'" when the document containing the forum selection clause is actually entitled "Standard Terms and Conditions of Sale" is more problematic. While it is clear the entire attached document is incorporated by reference, Go Imaging notes a possible ambiguity as to whether the Standard Terms and Conditions of Sale is what was meant by the phrase "Terms of Sale." However, the parties do not dispute that the Standard Terms and Conditions of Sale were attached, so this potential ambiguity due to the use of an abbreviated name for the attached document is inconsequential.

Go Imaging also argues that the Sales Agreement itself was fraudulently procured and the court should therefore not rely on the forum selection clause in the Standard Terms and Conditions of Sale. Dkt. 9. However, the court must determine whether the *incorporation* of the forum selection clause was the product of fraud or overreaching, not whether the entire agreement was fraudulently procured (at this juncture). *Haynsworth*, 121 F.3d at 963 ("Fraud or overreaching must be specific to a forum selection clause in order to invalidate it."). There is no allegation that there was fraud associated with the incorporation language on the Sales Agreement. *See* Dkts. 1, 9.

C.      **Other Reasonableness Factors**

The other factors in the reasonableness inquiry are whether enforcement will deprive Go Imaging of its day in court due to the grave inconvenience of Ohio state court, whether fundamental unfairness of Ohio law will deprive Go Imaging of a remedy, and whether enforcement would contravene strong public policy in Texas. Go Imaging argues that enforcing the forum selection clause would be unreasonable because (1) the documents were signed in Texas; (2) the equipment was sold in and shipped to Texas; (3) the equipment was serviced in Texas; and (4) the equipment remains in Texas. Dkt. 9. It contends that because of these facts, litigating in Ohio is unreasonable.

17

*Id.* Providian argues that Go Imaging cannot establish that the Ohio court would ineffectively or unfairly handle this case, and the designated forum would not be so seriously inconvenient as to make it unjust to enforce the provision. Dkt. 7. The court agrees that Go Imaging has not established that the clause is unreasonable simply because Go Imaging is located in Texas and bought and uses the equipment here. There is no allegation that Ohio law will deprive Go Imaging of a remedy or that litigating in Ohio would contravene strong public policy in Texas.

**D.     Public Interest Factors**

Because Go Imaging has not met its heavy burden of showing enforcement of the forum selection clause is unreasonable, the court turns to the public interest factors—administrative difficulties, local interest, governing law, and unfairness to citizens in an unrelated forum of having to sit on a jury. Go Imaging does not argue that there is court congestion in Ohio, but it does contend that Texas has a strong interest in protecting its citizens and local companies from "improper bait and switch tactics, such as those utilized by Defendant." Dkt. 9. It also argues that Texas law should apply but that even if Ohio law applies, there is no true conflict between Texas and Ohio law in this case.

While the court agrees that Texas has a strong interest in this dispute because Go Imaging resides here and purchased and uses the equipment here, Providian is based in Ohio, which means Ohio citizens also have an interest in this dispute. No issues of court congestion have been brought to this court's attention, and the parties have briefed no major distinction in the laws of Ohio or Texas with regard to the issues in this case. The court finds that the public interest factors do not significantly impact the analysis.

Because Go Imaging has not shown that the forum selection clause is unreasonable, the court finds that dismissal of this case for *forum non conveniens* is appropriate. Accordingly, Providian's

motion to dismiss for *forum non conveniens* is GRANTED. The court need not address Providian's other arguments.

## IV. Conclusion

Providian's motion to dismiss is GRANTED. Go Imaging's claims are DISMISSED WITHOUT PREJUDICE under the doctrine of *forum non conveniens*.

Signed at Houston, Texas on October 17, 2019.

_____
Gray H. Miller
Senior United States District Judge